(137 So. 669)

### KINNEY et al. v. POLLAK et al.

6 Div. 820.

Supreme Court of Alabama.

Oct. 22, 1931.

Rehearing Denied Dec. 3, 1931.

A. J. Harris, of Decatur, Jerone Edmundson, of Birmingham, and A. A. Griffith, of Cullman, for appellants.

Cabaniss & Johnston, of Birmingham, for appellees.

656

FOSTER, J.

The former appeal in this case is reported in Pollak v. Millsap, 219 Ala. 273, 122 So. 16, 65 A. L. R. 110. We then stated the principles of law which we thought were pertinent to the facts as alleged in the pleadings then as now. Since that opinion was approved, the same principles have been several times reaffirmed by us in cases cited in our more recent case of Kelly v. Tatum, 222 Ala. 655, 133 So. 703.

On this appeal the inquiry is whether the evidence supports the allegations of the bill. On that question the dispute hinges upon whether a loan of money was in fact made to complainants by Brown and Kinney as alleged, for the security of which the deed was executed. The note was executed to Judge Brown; the deed was made with them both as grantees. .

Appellants claim that the note did not evidence a debt, because it was never delivered to Judge Brown unconditionally, but that it was to be placed in escrow with the bank along with the deed, and was never to be delivered as evidence of a debt, but that the transaction merely extended to complainants an option to pay the amount of it by the date named; otherwise complainants should have no further claims on the land and owe no obligation.

We are not at all prepared to take issue with the contention that, if the note was by agreement only conditionally placed in the hands of Judge Brown as a conduit to the bank, or some other person, and to be held conditionally where it was to remain ineffective as an obligation by complainants until the time when complainants elected to pay the amount named in it, within the stipulated time, and that, if complainants should not do

so within such time, there was not by it nor by their agreement otherwise expressed any obligation by complainants to pay the amount; there was not shown a debt for which the deed could be security. A review of some of the evidence we think shows that appellants' contention is not sustained.

On August 24, 1923, Judge Brown wrote them that the time for redemption had almost expired. This appeared to be incidental and but a friendly reminder. On August 28, 1923, they wrote him, "Please, if possible, negotiate for a new loan." On September 5, 1923, he answered by writing as follows:

"If you, Robert and Charlotte will execute a note for the amount necessary to redeem the property, including the fee of $50.00 for services rendered by me heretofore in redeeming the property from tax sale, which was agreed on between Robert and myself, and a fee of $100.00 for my services in securing this loan and redeeming the property, making a total of $3526.00, and request Mrs. Kirtley to execute a deed to the party advancing the money, this deed to be delivered in escrow and held by the Leeth National Bank, of this city, as a security for the payment of the note, as provided in the note. I can secure the money to redeem from this mortgage sale. I am enclosing herewith note to be executed, together with instruction to Mrs. Kirtley for the execution of the deed. You will note that the instructions to the bank are embodied in the note. I have not been able to secure the money yet, and inasmuch as the redemption must be made before October 8th we have very little time to find it.

"I was informed by attorneys representing Mrs. Kirtley that a Mr. Jarman, of Washington, D. C., had approached them about redemption of the property. If you want me to handle the matter you will have to withdraw Mr. Jarman's authority, if he has any, and let me have those papers at once. The note enclosed should be signed by you as administratrix of the estate and by you individually and by Robert and Charlotte, as well as the instructions to Mrs. Kirtley. This arrangement will give you another year to redeem the property."

He sent a note for their signature which contained the following clause: "This note is given for money loaned to be used in redeeming property sold by May H. Kirtley under a mortgage executed by the payers hereof on, to-wit: 9th day of June, 1920, which mortgage was foreclosed by the said May H. Kirtley, on, to-wit: 8th day of October, 1921, and for the purpose of securing this indebtedness we have caused to be deposited with the Leeth National Bank, of Cullman, Alabama, a statutory warranty deed executed by the said May H. Kirtley covering the property embraced in said mortgage; said deed is to be held by said Leeth National Bank in escrow

until this debt is paid, and if we fail to pay this debt, together with the interest thereon, at maturity, or if we fail to keep the taxes on said property paid and allow said land to be advertised for sale for the taxes, then the said Leeth National Bank is authorized to deliver said deed to the grantee named therein."

He also sent an instrument giving instructions to the bank, as follows: "Mrs. May H. Kirtley, of Birmingham, Alabama, will forward to you a deed to certain property located in Birmingham, which is to be held by you in escrow to secure the payment of a note dated September 15, 1923, for $3,526.00, payable one year after date to Joel B. Brown. You are to hold this deed in escrow in accordance with the terms of said note"—also an instrument to the original mortgagee and purchaser at foreclosure sale providing that, upon payment of the amount necessary to redeem "from the foreclosure sale made by you under your mortgage you are authorized and requested to execute, to such person as Judge Joel B. Brown, of Cullman, Alabama, may designate, a statutory warranty deed to said property, and forward the same to the Leeth National Bank, of Cullman, Alabama."

By letter dated September 11, 1923, one of the complainants wrote Judge Brown, in which she said: "I am enclosing the papers you sent me properly signed and hope there will be no time lost in redeeming said lands."

Judge Brown testified that, after receiving the letter asking him to negotiate a loan and after he had sent the instruments to complainants, he completed arrangements at the bank for him and Kinney to get the money on their note to advance to Mrs. Kirtley, who held the land at foreclosure sale. She was directed to execute a deed to Brown and Kinney and attach it to a draft on the bank. This was done, and the money on account of the loan was advanced to them by the bank by paying the draft of Mrs. Kirtley with deed attached. He also testified that this note and the instructions to the bank duly signed were forwarded to him to be delivered to the bank, and that he deposited them with the bank in escrow.

But the correspondence between complainants and Judge Brown refers to a loan of money, and in none of it is there anything said about the note being delivered in escrow, nor is there other evidence of such stipulations. It was sent direct to him, and no conditions were mentioned nor anything to indicate that it did not constitute a complete unconditional delivery to him as evidence of a debt which they had requested him to negotiate. It then became an executed obligation to pay him money. The cashier of the bank testified that it was attached to the note of Brown and Kinney, and their note to the bank recites that the "paper attached pledged as collateral." So that the deposit of the note in escrow by Judge Brown had no effect upon the transaction between complainants and him because there was no such agreement in evidence. The day after the note of Brown and Kinney was due, Kinney paid it, had it transferred to himself, and took up all the papers. On the next day one of the complainants appeared at the bank, tried to pay the Brown note, but he was referred to Kinney, who refused to accept payment when it was offered to him on the same day and again a few days afterwards.

We see nothing in this arrangement but a loan of money by Brown and Kinney, later taken over by Kinney, who thereafter claimed the sole ownership of the property. There was an unconditional promise to pay the money shown by the execution and delivery of a note, containing provisions waiving exemptions and providing for an attorneys' fee for its collection. None of the correspondence nor instruments provide for its delivery in escrow, or that it was upon a condition. There was therefore a debt in every sense of the word, and it and the other documents clearly show that the deed was executed and delivered to secure its payment. The fact that the arrangement had the substantial effect of securing for complainants another year in which to redeem is not inconsistent with this view. It did in fact have such effect and went further than that.

At the time of offering to redeem the property by complainants, a cashier's check was tendered, but Kinney declined to permit redemption, not because a check rather than cash was offered, but because he claimed that the time had expired and they owed him nothing. Complainants have continued to hold the cashier's check in readiness, but did not pay the amount nor deposit the check in court when this suit was filed by them, and have never done so.

The circuit court held that such was a sufficient tender and decreed the right of redemption upon the payment of that amount without interest, but included other lawful charges.

Appellants complain that interest should be included. In this contention we agree to the extent herein explained, for the reasons which we will now undertake to state.

█ There is no doubt of the well-settled rule that tender or payment into court is not a condition to the filing, and maintenance of this nature of suit. Randolph v. Bradford, 204 Ala. 378, 86 So. 39; Murphree v. Summerlin, 114 Ala. 54, 21 So. 470; McCalley v. Otey, 99 Ala. 584, 12 So. 406, 42 Am. St. Rep. 87; Id., 90 Ala. 302, 8 So. 157; McGuire v. Van Pelt, 55 Ala. 344; Carlin v. Jones, 55 Ala. 624.

█ Prior to the enactment of what is now section 10147, Code, there was no statutory requirement that it was necessary to bring tendered money by complainant into court to

effect the statutory right of redemption. But the statute did require a tender before suit was filed. In the case of Murphree v. Summerlin, supra, the suit was to enforce the statutory right. The tender was alleged, but it was not brought into court. This court held, as later required by section 10147, that it was necessary, in order to keep the tender good, that it be brought into court. This is required in pleas of tender at law by section 9473, Code. The effect of the Murphree v. Summerlin Case is that, for a complainant in equity to get the benefit of an allegation of tender, the money must be brought into court the same as a defendant must who pleads a tender. It must be so placed that the opposite party can whenever he sees fit accept the amount tendered and end the litigation. This is accomplished by payment into court. Frank v. Pickens, 69 Ala. 369. This principle was also stated in the case of Daughdrill v. Sweeney, 41 Ala. 310, in which it is said in this connection that in equity the analogies of the rules in the law courts will be observed, and that, if complainant "pretends to avail himself of the plea of tender in equity, * * * he ought to be held to as great strictness as he would be held to at law." This is also asserted in effect in McCalley v. Otey, 90 Ala. 302, 308, 8 So. 157; Id., 99 Ala. 584, 589, 12 So. 406, 42 Am. St. Rep. 87; Jones v. Kelly, 203 Ala. 170, 82 So. 420.

The advantage which complainants seek by their tender is relief from the payment of interest thereafter. Undoubtedly, if they had been sued at law on the note, and had sought the benefit of a tender, a payment into court would be necessary under the statute. Equity will follow the law when the same benefit is sought in that court as in the law court, unless it would be inequitable to do so. 12 A. L. R. 940; 38 Cyc. 169.

Form No. 39, section 9532, Code, does not require a statement that the tender has been kept good during the time intervening between the date it was made and the date of the plea. But, though this allegation is not required, proof of it is necessary. Park v. Wiley, 67 Ala. 310; Frank v. Pickens, 69 Ala. 369; Saunders v. McDonough, 210 Ala. 208, 97 So. 622; Derby v. Bell, 217 Ala. 529, 117 So. 8; Jones v. Kelly, 203 Ala. 170, 82 So. 420.

In the case of McCalley v. Otey, supra, twice appealed, the original bill did not show that the amount tendered was brought into court. 90 Ala. 308, 8 So. 157, 159. An amendment later was filed which recited that the money was then and there brought into court. It was said that the payment into court was "material only as bearing on the question of costs and payment of the interest during the time intervening between the filing of the bill and the amendment." We understand that to mean that proof that they had the money ready to pay at any time up to the filing of the bill would relieve them of interest in the interim. But, failing to bring it into court with the bill and not until an amendment in which it was so alleged, there was a period thus created in which interest was chargeable. But, if thus kept good, it was not chargeable before the original bill was filed nor after the date on which the amendment was filed.

On a third appeal in that case (103 Ala. 469, 15 So. 945), it appears that, upon the facts shown by the proof, complainant did not keep the tender good up to the time of filing the suit, in that he had borrowed some of the money which he returned when the tender was refused, and when the amendment was filed did not pay into court interest to that date. So that the court held that in both aspects the tender was not kept good, and interest was due for the entire period to the date of the decree.

The bill in this case sufficiently charges a tender before suit. It does not allege that complainants have brought the amount of it into court. Neither is there an amendment to that effect.

The evidence shows that complainants deposited in the Leeth National Bank, the amount of the tender and executed a check payable to Kinney and had it certified by the bank and charged to their account, and that this check was offered to him. The cashier testified that such status remained, as shown by the bank records, until and during the time of his testimony. We think this sufficiently shows that they have been ready, able, and willing to pay the amount of the tendered money and kept it good up to the date of filing the suit. And, based upon that showing, complainants should be relieved of the payment of interest on the amount tendered from the date of the tender to the date of filing the suit; but that, because it was not brought into court then nor thereafter, interest is chargeable since that time.

Appellees insist that the decree is correct in not allowing interest, though the foregoing conclusion may be justified, because of usury resulting from the fact that included in the note was a fee of $100 to Judge Brown for negotiating the loan, in addition to a stipulation for 8 per cent. interest. At the time the amount of the note was fixed, including the $100 fee, the arrangement was not that Judge Brown would himself lend the money, but would negotiate for a loan. During the time when the letters were in transit, the arrangement he made with Kinney was that he and Kinney would join in handling the transaction. The fee was not understood to be in the nature of compensation for lending the money either directly or indirectly, but compensation for procuring a loan and

also for preparing the papers and attending to the business of redeeming the land, for complainants, who were in a distant city at the time, and required the services of some one on the ground to attend to it, in addition to lending the money.

The money was advanced to Brown and Kinney by the bank on their note for the exact amount at the same rate of interest as shown by the note from complainants to Brown.

Usury is the taking of more for the use of money than the law allows. Miller v. Graham, 196 Ala. 230, 72 So. 87; Darden v. Schuessler, 154 Ala. 372, 45 So. 130. "If an extra and reasonable amount be charged for some incidental service, expense, or risk assumed by the lender, or his employees, this is not for the use of the money,—it is not interest,—and cannot render the contract of loan usurious, unless the transaction be a shift or device intended in substance and legal effect to cover a usurious loan." Woolsey v. Jones, 84 Ala. 88, 4 So. 190, 192; 39 Cyc. 981.

Complainants did not include in the note the amount of the fee as interest nor as a device to evade the usury laws, nor with the agreement that Brown would himself be one of the lenders, and was not a charge for the use of the money either directly or indirectly. We think the contention that the loan was usurious is not sustained.

We are not prepared to agree with appellants that the court should have made allowances for taxes and assessments paid by Kinney, in excess of those included in the decree. But we hold that, as a condition to relief, complainants should pay interest on the sum of $3,808.08 at 8 per cent. per annum from August 18, 1926, the date of the filing of the original bill in this case, to the date of its payment into court on redemption.

■ But the appeal was necessary for appellants to secure the correction of the decree in a material respect, and therefore the appellees should pay the costs of the appeal.

We have endeavored to express our views on all the contentions made by appellants, resulting in the conclusion that the decree of the circuit court be corrected as indicated above, with the provision that appellees be allowed ninety days from the date of this judgment to effect the redemption, and, if not redeemed in that time, that the cause be dismissed, and in that event the complainants (appellees) shall pay the amount of all the costs of this cause in the circuit court as well as in this court. If they redeem as herein provided, appellant Kinney, as decreed by

the circuit court, shall pay the costs of that court which did not accrue on appeal.

Corrected and affirmed.

ANDERSON, C. J., and GARDNER, THOMAS, and BOULDIN, JJ., concur.

SAYRE and BROWN, JJ., not sitting.