181 So. 769

STATE v. NATIONAL CREDIT CO.

6 Div. 335.

Supreme Court of Alabama.
June 2, 1938.

A. A. Carmichael, Atty. Gen., and Matt H. Murphy, Sp. Atty. Gen., and Wm. H. Ellis and Frontis H. Moore, both of Birmingham, for the State.

Foster, Rice & Foster, of Tuscaloosa, for appellee.

KNIGHT, Justice.

This is an appeal by the State of Alabama from a judgment of the Circuit Court of Tuscaloosa County, in Equity, setting aside an assessment made by the State Tax Commission for *excise tax,* levied against appellee under the provisions of An Act of the Legislature of Alabama, approved April 4th, 1933. General Acts, 1933, Extra Session, pages 104–110.

The major purpose of a similar Act of 1932, Gen. Acts 1932, Ex Sess., p. 107, was declared, in Union Bank & Trust Co. v. S. H. Blan, Individually, etc., 229 Ala. 180, 155 So. 612, 614, to be "to levy an excise tax for the privilege of engaging in the business of banking in the state of Alabama, and of conducting a financial business employing moneyed capital coming into competition with the business of national banks, so that national banks as well as state banks would be amenable· to the law."

The assessment made against the appellee, National Credit Company, was for the tax year 1935, and was based upon, or measured by the net income of appellee for the year 1934.

In the record we find the following stipulation of counsel:

"It is agreed by and between the State of Alabama and National Credit Company, a partnership composed of V. Hugo Friedman, Sam Friedman, and Edwin Rosenfeld, that an assessment was duly and regularly made by the State Tax Commission of the State of Alabama for excise tax allegedly due by the said National Credit

Company for the year 1935, based upon net income for the calendar year 1934, under the authority of Act No. 111, House Bill 413, approved April 4, 1933, General and Local Acts of 1933, page 104, and that a protest to said assessment was duly and regularly filed by said National Credit Company and duly and regularly heard by the said Commission, and that after such hearing, said assessment was made final in the amount of $79.90, and that if the said National Credit Company is liable for said tax, it is liable in said amount of $79.90, with interest thereon; that the said National Credit Company duly and properly appealed from said assessment, within the time allowed by law, to the Circuit Court of Tuscaloosa County, in Equity, the county in which the members constituting the partnership firm of said National Credit Company reside and where said National Credit Company did business, and that after said appeal to said Circuit Court, a certified copy of the transcript of record of said Commission was duly filed in said Court and on the trial of this cause, said transcript was introduced in evidence by the State of Alabama, and a prima facie case thereby made out against the said National Credit Company."

The evidence offered on the trial of the cause conclusively establishes the following facts: That the appellee is a partnership, with its place of business in the City of Tuscaloosa; that for a number of years it has been engaged in the business of buying and discounting purchase money notes and conditional sales contracts, given for automobiles bought on time payment. This business has been carried on by appellee for a number of years, including the years of 1933, 1934, 1935, 1936 and 1937, in the Counties of Tuscaloosa and Pickens, and to some limited extent in Hale County. The notes and conditional sales contracts were given to the several automobile dealers, and by them sold or discounted, and transferred to the appellee. A part, about twenty per cent, of the paper is transferred to the National Credit Company without recourse, and the remaining eighty per cent is transferred upon endorsement by, and with recourse on, the automobile dealer. It also appears from the evidence that when an automobile is purchased on credit, or partly on credit, the *purchaser* gives the dealer a retention of title contract covering the balance due, of the sale price, together with insurance and other carrying charges; that the dealer then discounts,

endorses and transfers the paper to the National Credit Company, and this company undertakes the collection of the deferred payments.

It appears from the record that appellee's purchases or discounts for the past several years have been: 1932, $61,337.00; 1933, $59,713.00; 1934, $66,750.00; 1935, $93,896.00; 1936, $163,986.36.

The evidence shows that during the years 1933 to 1937 there were two national banks in the City of Tuscaloosa, but no such banks in either Hale or Pickens Counties; that the loans and discounts of each of the two national banks averaged about $1,500,000.00 annually. The evidence further shows that the two banks did discount notes for automobile dealers during years from 1933 to 1937, but that all such notes so discounted were endorsed by the dealers; and that the banks had no separate department for this class of business.

Mr. Palmer, an official of the First National Bank of Tuscaloosa, testified that his bank had considered the advisability of putting in a department to finance the purchase of automobiles, but decided against it. There was other evidence in the case, but we do not think it necessary to state it, as it is not essentially different from that above noted.

Upon final submission, the circuit court held that the appellee, the National Credit Company, was not a "financial institution within the meaning of said Act, and was not liable for the tax assessed," and thereupon vacated and annulled the assessment made by the State Tax Commission.

■■ Undoubtedly the evidence leaves no room to doubt that the chief business of the appellee during the years 1933 to 1937, both inclusive, was buying and discounting commercial paper and retention of title contracts given for motor vehicles sold by the automobile dealers in Tuscaloosa and Pickens Counties. The evidence leaves no room for doubt that the business of appellee was very substantial in amount, not inconsequential. We know also that buying and discounting commercial paper is one, if not the principal source of income of national banks. Loans and discounts are synonymous terms. National Bank v. Johnson, 104 U.S. 271, 26 L.Ed. 742; Talmage v. Pell, 7 N.Y. 328. And in the case of Niagara County Bank v. Baker, 15 Ohio St. 68, it was held that "to discount paper" as

understood in the business of banking, is only a mode of loaning money with the right to take the interest allowed by law in advance.

We are clear to the conclusion that the appellee falls within the class subject to the payment of the excise tax, provided by the Act of 1933, above referred to. A prolonged discussion of the case, we deem unnecessary. Confessedly, during the years 1933 to 1938, both inclusive, the appellant was engaged in buying and selling commercial paper, and its capital so employed was in substantial competition "with the loan and investment features of the business of national banks." Title Guarantee Loan & Trust Co. v. State, 228 Ala. 636, 155 So. 305, 308.

In this last cited case, we held that it was not necessary that it be made to appear that the business of the appellee actually came into competition *with any particular national bank,* as in cases where a *bank is seeking immunity because of undue discrimination under the provisions of Section 5219,* Rev.St.U.S., 12 U.S.C.A. § 548. That the purpose of our statute imposing the excise tax was to prevent national banks from claiming undue discrimination, and to that end financial institutions are included whose business is of such character which comes into competition with that of national banks.

There is certainly nothing in the case of Commercial Credit Co. v. Tarwater, 215 Ala. 123, 110 So. 39, 48 A.L.R. 1437, nor in the case of First National Bank of Shreveport et al. v. Louisiana Tax Commission, 289 U.S. 60, 53 S.Ct. 511, 77 L.Ed. 1030, 87 A.L.R. 840, which is opposed to our holding in the instant case.

It follows, therefore, that the judgment of the circuit court must be reversed, and judgment will be here rendered adjudging the appellee liable to the payment of the tax assessed and levied against it by the State Tax Commission, and fixing the amount of that judgment at the sum of $79.-90, with interest from December 15th, 1937. Let the appellee pay all cost accruing in the court below and all costs accruing on this appeal, in this court, and in the court below.

Reversed and rendered.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.